## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHANGZHOU KAIDI | : | |
| ELECTRICAL CO., LTD., et al. | : | |
| | : | |
| | : | |
| v. | : | Civil No. CCB-13-1798 |
| | : | |
| | : | |
| OKIN AMERICA, INC., et al. | : | |
| | : | |

## MEMORANDUM

Changzhou Kaidi Electrical Co. and Kaidi, LLC (together, "Kaidi") seek a declaratory

judgment that the KDPT005 linear actuator does not infringe United States Patent Number

5,927,144 ("the '144 patent"), which Dewert Okin GmbH owns by assignment and which it and

Okin America, Inc. (together, "Okin") practice via manufacture of the Okin Betadrive linear

actuator.  Okin, in turn, alleges that the KDPT005 infringes that patent.  Okin now moves to

exclude evidence, testimony, or argument concerning invalidity opinions not contained both in

Kaidi's initial invalidity contentions and in the invalidity report of Kaidi's expert, Dr. William

Howard.  The parties argued that motion at a hearing on May 6, 2015.  It will be granted.

## DISCUSSION

Okin's motion challenges theories contained in Howard's report but not disclosed in

Kaidi's initial invalidity contentions, as well that report's incorporation by reference of theories

described in Kaidi's initial disclosure but not specifically discussed in the report.  The court

addresses each challenge in turn.

## I. Kaidi's theories not disclosed in its invalidity contentions

Okin contends that Kaidi may not present invalidity theories articulated in Howard's report but not previously disclosed in the invalidity contentions that this court's local rules required it to serve.  The court concludes that Kaidi has not complied with the local rules and that its violation should be sanctioned by excluding its expert's new theories.

### A. Kaidi's compliance with the local rules

Like many other federal district courts, this court has adopted local rules to govern patent litigation.  Where, as here, a party opposes a claim of patent infringement on the basis of invalidity, the local rules require that party to serve certain invalidity contentions within 60 days of the scheduling order.  *See* Local Rule 804.1(c) (D. Md. 2014).[1]  Among other things, those contentions must disclose "[t]he identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious."  Local Rule 804.1(c)(i).  As to each item of prior art, the contentions must specify "[w]hether [that] item of prior art anticipates each asserted claim or renders it obvious.  If obviousness is alleged, [the contention must include] an explanation of why the prior art renders the asserted claim obvious, including an identification of any combinations of prior art showing obviousness."  Local Rule 804.1(c)(ii).  And those contentions must be accompanied by "[a] chart identifying where specifically in each alleged item of prior art each limitation of each asserted claim is found . . . ."  Local Rule 804.1(c)(iii).

Local patent rules such as these recognize the practical difficulty of using "traditional discovery mechanisms" to force patent litigants "to pin down" their theories of infringement and invalidity early enough to permit adequate preparation for trial.  *O2 Micro Int'l Ltd. v.*

---

[1] Here, the court approved the parties' proposed scheduling order, providing that such disclosures would be served by October 14, 2013.  (*See* Order, ECF No. 17.  *See also* Joint Proposed Schedule, ECF No. 15.)

*Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365–66 (Fed. Cir. 2006) (explaining the theory informing the Northern District of California's substantively similar local patent rules). Accordingly, "[l]ocal patent rules are designed to 'require the parties to crystallize their theories of the case early in the litigation so as to prevent the shifting sands approach to'" legal argument. *Paice LLC v. Hyundai Motor Corp.*, Civil No. WDQ-12-499, 2014 WL 3725652, at *3 (D. Md. July 24, 2014) (quoting *O2 Micro*, 467 F.3d at 1364)).[2]

The local rules do not, however, shackle a defendant to its initial validity contentions by preventing all future modifications of those theories. To do so "might well conflict with the spirit, if not the letter, of the notice pleading and broad discovery regime created by the Federal Rules." *O2 Micro*, 467 F.3d at 1366. Instead, the local rules permit a party to amend its contentions "upon written consent of all parties, or, for good cause shown, upon leave of the Court." Local Rule 804.6. With that provision, "[t]he patent rules 'seek to balance the right to develop new information in discovery with the need for certainty as to legal theories.'" *Paice*, 2014 WL 3725652, at *3 (quoting *O2 Micro*, 467 F.3d at 1366)).

Here, Okin contends that Howard's expert invalidity report contained novel theories not disclosed in Kaidi's invalidity contentions. Kaidi served those invalidity contentions on October 14, 2013. (*See* Mot. In Limine Concerning Invalidity Opinions 3, ECF No. 135.)[3] Kaidi never sought leave to amend its initial contentions, and Okin has not consented to any such amendment. Fact discovery closed on January 9, 2015. (*See* Order, ECF No. 103. *See also* Joint Proposed Modifications to Schedule, ECF No. 101.) Kaidi served Howard's invalidity report on January 12, 2015. (*See* Mot. In Limine Concerning Invalidity Opinions 3.) That report

---

[2] Unpublished opinions are cited for the soundness of their reasoning, not for any precedential value.
[3] Okin does not present any document confirming that date. Kaidi, however, does not oppose Okin's representation that it timely served its invalidity contentions.

articulates a number of theories of anticipation and obviousness that Kaidi did not include in its

initial invalidity contentions.  Some of those theories are premised on entirely new prior art not

discussed in Kaidi's initial invalidity contentions.  Others are premised on the prior art Kaidi

previously disclosed, but rely on novel references or novel combinations of references within

that prior art.[4]  Trial is set for May 11, 2015.  (*See* Order, ECF No. 119.)

In its opposition, Kaidi stipulates that it will not rely on those claim charts included in

Howard's invalidity report that refer to entirely new prior art.  (Opp. Mot. In Limine Concerning

Invalidity Opinions 1, ECF No. 159.)  That concession, Kaidi explains, seeks "to streamline the

issues to be tried."  (*Id.*)  As to its remaining novel theories, Kaidi does not now seek to amend

its initial invalidity contentions or otherwise assert good cause to do so.  Instead, it claims that

their disclosure for the first time in Howard's expert report is consistent with the local rules.

That position is premised on several related arguments, none persuasive.

Kaidi first contends that its initial invalidity contentions contained omnibus language

broad enough to include the new theories Howard now advances.  Specifically, Kaidi's invalidity

contentions stated that, "[i]n addition to the specific combinations and modifications described"

in its obviousness charts, certain prior art references contained teachings "applicable to each

element of the asserted claims."  (Invalidity Contentions 9.)  The contentions list certain

exemplary items of prior art that allegedly describe a particular limitation of each claim, then

assert that a person of ordinary skill in the art might combine those exemplary items of prior art

"with the devices disclosed in some of the prior art items identified herein to arrive at the alleged

invention."  (*Id.*)  Kaidi asserts that such omnibus language "put[] Okin on notice that these

---

[4] Those new theories are described in Okin's motion.  (*See* Mot. In Limine Concerning Invalidity Opinions 4.)  They will not be reproduced here.

references could be combined with the primary references to render the claims obvious." (Opp. Mot. In Limine Concerning Invalidity Opinions 3.)

The local rules, however, require a greater measure of specificity than that. As noted, they require patent defendants to identify expressly "any combinations of prior art showing obviousness," along with "[a] chart identifying where *specifically* in each alleged item of prior art each limitation of each asserted claim is found." Local Rules 804.1(c)(ii)–(iii) (emphasis added). The rules thus do not permit the conclusory assertion that the '144 patent is obvious in light of particular prior patents, rather than specific combinations of those references.

As the Eastern District of Texas explained, its parallel patent rules "require[] disclosure of combinations, not just references, and thus do[] not expect the patentee to consider every possible combination of the references disclosed." *LML Patent Corp. v. JPMorgan Chase & Co.*, Civil No. 2:08-448, 2011 WL 5158285, at *4 (E.D. Tex. Aug. 11, 2011). Such an expectation would be contrary to the purpose of the local rules. Patents often contain dozens of limitations and many claims. Where, as here, a party's invalidity contentions refer to several prior patents, the many elements contained in each item of prior art may be mixed in literally thousands of alternative combinations. Permitting parties to disclose only conclusory invalidity contentions would thus promote the proliferation of obviousness theories, rather than pinning the parties down to a discrete number of such theories, as the local rules seek to do.[5]

Relatedly, Kaidi argues that the specific references contained in its initial invalidity contentions were expressly exemplary, thereby reserving Kaidi's right to alter its theories

---

[5] *Better Bags, Inc. v. Illinois Tool Works, Inc.*, 939 F. Supp. 2d 737 (S.D. Tex. 2013), may establish an exception to that rule. That case permitted, under parallel local patent rules, a defendant to rely on language in its initial invalidity contentions stating that a certain product "anticipated and rendered obvious every element of every claim allegedly infringed" where the defendant also alleged that the prior art and the asserted patent were *identical*. *Id.* at 747. Kaidi does not assert such a tight correspondence between any item of prior art and the '144 patent. Accordingly, the court need not decide whether the holding of *Better Bags* is persuasive here.

subsequently.  Indeed, Kaidi's initial contentions stated that "[t]he obviousness combinations of

the references" it provided "are merely exemplary and are not intended to be exhaustive.

Numerous additional obviousness combinations of the prior art references identified are possible,

and Kaidi reserves the right to use any such combination in this litigation."  (Invalidity

Contentions 5.)  Because Kaidi now seeks only to present previously undisclosed combinations

of those same prior art references, Kaidi concludes that its position is consistent with that

reservation of rights.

The local rules do not permit a party to claim the measure of discretion that Kaidi

purports to reserve for itself here.  As noted, those rules require the disclosure of specific

combinations with which a party intends to prove obviousness.  A party cannot opt out of that

requirement.  *See, e.g.*, *Realtime Data, LLC v. Packeteer, Inc.*, Civil No. 6:08-144-LED-JDL,

2009 WL 4782062, at *3 (E.D. Tex. Dec. 8, 2009) ("[T]he court rejects [the] argument that a

defendant has the ability to rely upon language in its invalidity contentions . . . stating that it

effectively reserves the right to assert obviousness combinations from any of the prior art

references that appear in its invalidity contentions.").  To hold otherwise would permit the sort of

"shifting sands approach to" patent litigation the local rules seek to prevent.  *Paice LLC.*, 2014

WL 3725652, at *3.

At the motions hearing, Kaidi retorted that Okin's failure to object to the exemplary

language contained in the initial invalidity contentions forfeited Okin's right to object to Kaidi's

reliance on that language now.  But Kaidi cites no authority supporting its position.  And the

local rules place the burden on the party asserting invalidity to disclose its contentions and to

amend those contentions diligently, as necessary.  *See* Local Rule 804.1(c); *Paice*, 2014 WL

3725652, at *3 (citing *O2 Micro*, 467 F.3d at 1366).  They do not require the opposing party to

seek out such contentions via discovery.  Indeed, the local patent rules are specifically designed

to *replace* contention interrogatories, inverting the normal allocation of the burden of production

in the early stages of litigation.  *See O2 Micro*, 467 F.3d at 1365.  Where, as here, the burden is

on Kaidi to produce its invalidity contentions—not on Okin to ask for those contentions—the

court cannot conclude that Okin's putative acquiescence to Kaidi's use of exemplary language

forfeited Okin's right to object to that language now.

Kaidi next asserts that any deviation from its initial invalidity contentions is not

sufficiently severe to violate the local rules, for "Rule 804.1 [does not] require . . . word-for-

word correspondence" between initial invalidity contentions and an expert's subsequent report.

(Opp. Mot. In Limine Concerning Invalidity Opinions 4.)  The premise of that argument is

accurate: as noted, a party may amend its invalidity contentions with all other parties' consent or

with leave of the court.  *See* Local Rule 804.6.  Even absent such an amendment,

> the scope of an expert's report and the scope of a [party's] . . . contentions are not
> the same.  The . . . contentions are not required to "disclose specific evidence nor
> do they require a plaintiff to prove its . . . case."  Expert reports, on the other
> hand, "must include a complete statement of the expert's opinions, the basis and
> reasons for them, and any data or other information considered when forming
> them."

*LC Eldridge Sales Co. v. Azen Mfg. Pte., Ltd*, Civil No. 6:11-599, 2013 WL 7937026, at *7 (E.D.

Tex. Oct. 2013) (discussing infringement contentions, not invalidity contentions) (quoting

*Fenner Invs., Ltd. v. Hewlett-Packard Co.*, Civil No. 6:08:273, 2010 WL 786606, at *2 (E.D.

Tex. Feb. 26, 2010)).

Kaidi's conclusion, however, does not follow from that premise.  Although an expert's

report must offer evidence and proof not necessarily disclosed in a party's invalidity contentions,

it may not present theories premised on combinations of prior art or references within the prior

art not previously disclosed.  Indeed, courts have precluded parties from "us[ing] previously

identified prior art to assert . . . new prior art combinations that were not included in its earlier"

disclosures.  *BreathableBaby, LLC v. Crown Crafts, Inc.*, Civil No. 12-94 (PJS/TNL), 2014 WL

3928526, at *4 (D. Minn. Aug. 12, 2014) (excluding those theories).  *See also LML Patent*

*Corp.*, 2011 WL 5158285, at *1, *7 (granting a motion to strike new obviousness combinations

from an expert's reports even where those combinations were based on previously identified

prior art references).

Accordingly, the court concludes that Kaidi's reliance on theories not previously asserted

in its invalidity contentions violates Local Rule 804.1(c).

### B. Appropriate sanction

The local rules do not specify the consequences for a party's noncompliance with their

disclosure requirements.  As the Federal Circuit has observed, however, "the rules are essentially

a series of case management orders . . . . The court may impose any 'just' sanction for the failure

to obey a scheduling order, including 'refusing to allow the disobedient party to support or

oppose designated claims or defenses, or prohibiting that party from introducing designated

matters in evidence.'"  *O2 Micro*, 467 F.3d at 1363 (quoting Fed. R. Civ. P. 16(f), 37(b)(2)(B)).[6]

Other courts have impliedly analogized the local patent rules to the disclosure requirements

contained in Federal Rule of Civil Procedure 26(a), observing that failure to comply with such a

requirement precludes reliance on non-disclosed materials in "a motion, at a hearing, or at a trial,

unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  *See, e.g.,*

---

[6] The language from Rule 37 that *O2 Micro* quotes has moved from subsection (b)(2)(B) to subsection (b)(2)(A)(ii).

*Tyco Healthcare Grp. LP v. Applied Med. Resources Corp.*, Civil No. 9:06-151, 2009 WL 5842062, at *2 (E.D. Tex. Mar. 30, 2009) (observing that a party's failure to comply with the local patent rules on disclosure, "unless substantially justified or harmless, [often] means the evidence will be excluded"). *Cf. ePlus, Inc. v. Lawson Software, Inc.*, Civil No. 3:09-620, 2010 WL 3219318, at *2 (E.D. Va. Aug. 13, 2010) (invoking Rule 37(c) as the appropriate authority for sanctions for noncompliance with a scheduling order requiring disclosure).

Whether Local Rule 804.1(c) is more like a scheduling order or more like a disclosure requirement, however, does not affect the resolution of this motion, for the consequence for noncompliance is frequently the same: "the exclusion of evidence is often an appropriate sanction for" violating the local patent rules. *02 Micro*, 467 F.3d at 1369; *accord Better Bags*, 939 F. Supp. 2d at 748–49 (striking an expert's report where, "without explanation or leave of court, that report contains obviousness contentions that are inconsistent with the Preliminary Invalidity Contentions").

Kaidi does not seek to justify its conduct, other than to argue that the rules permitted the introduction of its novel invalidity theories, an argument the court has rejected. *See supra* Part I.A. Instead, Kaidi asserts that Okin has not been prejudiced by the failure to disclose the theories Kaidi now seeks to present at trial.[7] Kaidi emphasizes that Okin's expert, James Babcock, was able to rebut Howard's invalidity report with a lengthy response and that Okin

---

[7] Kaidi argues that exclusion is inappropriate where the opposing party has not been prejudiced by nondisclosure, citing for support *Fresenius Medical Care Holdings, Inc. v. Baxter International, Inc.*, No. C 03-1431 SBA, 2006 WL 1329997, at *6 , 7 (N.D. Cal. 2006). Because the court concludes that Okin was prejudiced by Kaidi's failure to disclose its new invalidity theories, it need not evaluate that argument. In any case, the circumstances in *Fresenius* are meaningfully different from the circumstances here. In that case, a party failed to disclose certain best mode and anticipation defenses in its invalidity contentions. As to the best mode defense, *Fresenius* held that the local rules did not require disclosure of such a theory, and that the opposing party had greater knowledge of facts related to that theory. *See id.* at *6. As to anticipation, the allegedly novel theory had been repeatedly and diligently disclosed to the opposing party, and discovery on the issue had been exchanged. Accordingly, any failure to move to amend the invalidity contentions was merely "technical," and generated no prejudice. *Id.* at *7. As discussed below, that is not the case here.

"had nearly ten weeks from the service of Dr. Howard's invalidity report to file dispositive motions or motions *in limine* on invalidity . . . ."  (Opp. Mot. In Limine Concerning Invalidity Opinions 6.)

Neither of those observations suggests that the tardy assertion of Kaidi's new invalidity theories was harmless.  As to Babcock's response to Howard's report, some courts have concluded that the capacity of an opposing party's expert to respond to novel invalidity contentions "is not sufficient" to save those theories from exclusion.  *LC Eldridge*, 2013 WL 7937026, at *4 (citing *LML Patent Corp.*, 2011 WL 5158285, at *4).  That Okin's expert could cobble together a rebuttal does not bear on the cogency of that response.  Indeed, by the time Kaidi served Howard's report, fact discovery was closed, precluding Okin from developing whatever factual support it might have needed to undermine Kaidi's theories more convincingly.  As Okin explains, it developed its response "[d]ue to the compressed timing of the expert report exchange and pre-trial schedule in this action."  (Mot. In Limine Concerning Invalidity Opinions 5.)  Okin's decision to respond—which kept this case on track—does not imply that Babcock's response is of the quality it would have been had Okin been given the opportunity to develop the facts necessary to inform and support Babcock's opinion.  Kaidi's suggestion that Okin had ten weeks in which to prepare a dispositive motion or a motion in limine, such as this motion, does nothing to remove that prejudice.  "Because fact discovery had closed, and the deadline for [responsive] expert reports was only one month away when" Howard submitted his report, Okin's ability to respond "was severely curtailed."  *Tyco*, 2009 WL 5842062, at *3.

When evaluating the possible exclusion of evidence for failure to comply with the local patent rules, courts sometimes evaluate factors other than prejudice.  In the Eastern District of

Texas, those factors include: "[t]he length of the delay and its potential impact on judicial proceedings"; "[t]he reason for the delay, including whether it was within the reasonable control of the movant"; "[t]he importance of the particular matter, and if vital to the case, whether a lesser sanction would adequately address the other factors to be considered and also deter future violations"; "[w]hether the offending party was diligent in seeking an extension of time, or in supplementing discovery, after an alleged need to disclose the new matter became apparent." *LML Patent Corp.*, 2011 WL 5158285, at *4.  In the District of Minnesota, courts also evaluate "whether the prior art is merely cumulative." *BreathableBaby*, 2014 WL 3928526, at *4.

The application of each of those factors counsels exclusion here.  Kaidi introduced its new theories nearly 15 months after its initial invalidity disclosures, after the close of fact discovery, and four months before the trial.  As noted, that lengthy delay prejudiced Okin.  As for the reason for that delay, Kaidi does not indicate that it developed its new theories in response to new information revealed during discovery.  *Compare, e.g.*, *Paice*, 2014 WL 3725652, at *3 (contemplating that "newly discovered information" might be good cause to amend a party's initial contentions).  To the contrary, Kaidi now seeks to present novel invalidity theories premised on prior art references included in its initial disclosure, indicating that Kaidi could have presented those theories at the outset, rather than waiting until now.  Its failure to present those theories initially suggests that they are of lesser significance to Kaidi's case than those theories Kaidi did present.  *See Tyco*, 2009 WL 5842062, at *4 (noting that if a party's novel contentions were important, the defendant "would have disclosed them in its Invalidity Contentions at the outset").  The exclusion of those theories is less severe because Kaidi will not be precluded from offering an invalidity defense premised on theories included in both Howard's

11

expert report and its invalidity contentions.  In this sense, these new theories are also cumulative

of those other arguments Kaidi will be able to present.  Last, Kaidi has never sought to amend its

initial disclosures, let alone acted with diligence.  Diligence is of great significance; Kaidi would

have been forced to demonstrate diligence had it moved for leave to amend its invalidity

disclosures, as the rules require.  *See Paice*, 2014 WL 375652, at *3.  Its disregard for that

requirement implies the need for a strong sanction here.  *See Better Bags*, 939 F. Supp. 2d at 745

(explaining that exclusion is often appropriate where "the party failing to make the timely

disclosure lacked diligence").

Application of the Fourth Circuit's standards for sanctions under either Federal Rule of

Civil Procedure 37(b)(2) or Rule 37(c)(1) would generate the same result.  Those standards

probably do not apply, insofar as the Federal Circuit has held that its law, not the law of the

regional circuit, governs analogous local patent rules.  *See O2 Micro*, 467 F.3d at 1364–65.

Nevertheless, for the sake of completeness, the court considers both standards in the alternative.

Before excluding evidence under Rule 37(c) for failure to disclose, the Fourth Circuit

recommends—without requiring—that a district court consider "the following factors: (1) the

surprise to the party against whom the evidence would be offered; (2) the ability of that party to

cure the surprise; (3) the extent to which allowing the evidence would disrupt trial; (4) the

importance of the evidence; and (5) the non-disclosing party's explanation for its failure to

disclose the evidence." *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014) (quoting *S.

States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003)).  As

noted, Kaidi's disclosure of novel invalidity theories after the close of fact discovery limits

Okin's capacity to respond to those new arguments.  Reopening discovery might minimize that

prejudice, but only at the cost of postponing the trial, which has already been scheduled.  Kaidi's

failure to disclose those theories initially suggests that they are of relatively lesser importance

than those arguments it *did* disclose and will be able to present at trial.  And, above all, Kaidi has

made no effort to amend its contentions or otherwise explain its disregard for the disclosure

requirement.  The sole factor that might cut against exclusion is surprise.  To the extent Kaidi

reserved its right to supplement its initial contentions, Okin arguably was not "surprised" by

Kaidi's subsequent alteration of its theories.  But even if the court credited Kaidi's reservation of

rights, want of surprise does not outweigh the other considerations discussed above.

Accordingly, the Fourth Circuit's standard confirms that exclusion is proper.

Compared to Rule 37(c), Rule 37(b) "provides district courts with greater discretion in

selecting one or more appropriate sanctions," which "allows district courts to consider a broader

range of factors" in their analysis.  *S. States*, 318 F.3d at 597.  In addition to the factors discussed

above, timely compliance with Local Rule 804.1(c) is necessary to inhibit the sort of "shifting

sands approach to" litigation the local rules seek to avoid.  *Paice LLC*, 2014 WL 3725652, at *3.

And, at this late date in the litigation, no sanction less drastic than exclusion would remedy the

prejudice to Okin without also postponing the trial.

Accordingly, the court will preclude testimony, evidence, and argument bearing on

invalidity theories contained in Howard's report but not disclosed in Kaidi's invalidity

contentions.

## II. Kaidi's invalidity contentions not contained in Howard's report

Okin also challenges Howard's incorporation by reference of Kaidi's initial invalidity

contentions in his report.  Howard's report indicates that he reviewed Kaidi's initial invalidity

contentions, agreed with them, and "adopt[ed] as if fully set forth herein all of the arguments,

rationales, prior art, combinations, and contentions" within that document.  (Invalidity Report

¶ 250.)  In addition, Howard's report indicated that the obviousness combinations it analyzed

were merely "exemplary, not exhaustive," and that Howard "reserve[d] the right to testify as to

any additional combinations" that he did discuss in his report.  (*Id.* at ¶ 267.)  Okin challenges

Howard's ability to offer such opinions at trial.

Kaidi has not opposed Okin's motion to the extent it seeks to preclude Howard from

testifying about opinions he has not specifically addressed in his report.  It has thus abandoned

Howard's putative reservation of his rights to subsequently opine on those matters.  That is

reason enough to grant Okin's motion.

Even if Kaidi had opposed Okin's arguments, the court would preclude Howard from

opining on matters not included in his report.  Federal Rule of Civil Procedure 26(a)(2)(B)(i)

requires an expert witness such as Howard to disclose a report containing, among other things, "a

*complete* statement of *all* opinions the witness will express and the *basis and reasons for them*."

(emphases added).  An expert may not testify at trial about matters not disclosed in her report or

disclosed without any statement of their underlying basis and reasons, "unless the failure was

substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  In *Promega Corp. v. Applied*

*Biosystems, LLC*, for example, an expert "report incorporate[d] by reference an 'invalidity claim

chart' prepared by [a party's] attorneys."  Civil No. 13-2333, 2013 WL 9988881, at *5 (N.D. Ill.

May 28, 2013).  The court precluded testimony concerning theories in that chart that were not

expressly set out in the report, reasoning that "[e]xperts may not merely rubber stamp a lawyer's

argument."  *Id.*  The same is true here.  Because an expert must justify her opinions and disclose

those justifications in a report, Howard may not opine at trial on matters not specifically

discussed in his report.

## CONCLUSION

Accordingly, Okin's motion will be granted.  Kaidi may not introduce at trial testimony,

other evidence, or argument concerning invalidity theories not contained in both its initial

invalidity contentions and Howard's report.


May 8, 2015_____                                              _____/s/_____
Date                                                                         Catherine C. Blake
                                                                              United States District Judge